```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RICKY PATRICK HESTER,          :
                Petitioner,    :     **OPINION AND ORDER**
                               :
v.                             :     18 CV 4763 (VB)
                               :     14 CR 420 (VB)
UNITED STATES OF AMERICA,      :
                Respondent.    :
-------------------------------------------------------x
```

Copy Mailed by
Chambers 9-9-19
DH

Briccetti, J.:

    Ricky Patrick Hester, proceeding pro se, has moved under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence, alleging that his trial counsel, Patrick A. Mullin, Esq., provided constitutionally ineffective representation. Hester claims his attorney:

    1. unreasonably failed to cross-examine witnesses or sufficiently investigate in connection with Hester's motion to suppress;

    2. unreasonably failed to raise a double jeopardy argument and/or request a lesser-included offense instruction at trial;

    3. unreasonably failed to call an expert witness at trial; and

    4. unreasonably failed to call character witnesses at trial.

    For the following reasons, the motion is DENIED and the petition is DISMISSED.

## BACKGROUND

    Hester's motion and attached exhibits, the government's memorandum of law in opposition to the motion, and Hester's reply, as well as the record of the underlying criminal proceedings, reflect the following:

    In the course of an unrelated investigation, special agents of the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), discovered an

email sent from the email address, "cubs_freak90@yahoo.com" (the "Yahoo account"), which attached a video file containing child pornography. According to Yahoo's records, the names "Ricky Hester" and "Mr Patrick Hester" were associated with the Yahoo account, and the billing city and state were listed as "Granger, Indiana." The email was sent from an Internet protocol ("IP") address controlled by an Internet service provider ("ISP") of the United States Department of Defense located at West Point, New York.

The contents of the Yahoo account were reviewed pursuant to a search warrant. Between October 2012 and October 2013, approximately 600 emails containing or relating to child pornography were sent to and from the Yahoo account, including depictions of children engaged in sexual acts.

Hester, a cadet at the United States Military Academy at West Point, used the Yahoo account to send and receive emails, including photographs of himself sent to another person with whom he also exchanged child pornography, as well as emails from his family members. The Yahoo account was frequently accessed using (i) an IP address associated with the West Point dormitory where Hester resided, (ii) an IP address associated with Hester's home address in Granger, Indiana, and (iii) IP addresses associated with Hester's cellphone.

On December 18, 2013, several HSI agents executed a search warrant in Hester's dorm room at West Point. When Hester arrived at the dorm room, Special Agent Kelly McManus told him the agents were executing a search warrant and that he was not under arrest. Hester agreed to speak to the agents and, after initially denying any involvement with child pornography, he provided a full confession—telling the agents, among other things, that he used the Yahoo account to send inappropriate images of children, used a Dropbox account to trade images and videos of child pornography, saved most of his child porn on his cellphone, and preferred boys

between the ages of 4 and 18. He also told the agents he had a cellphone but it was broken—it had a cracked screen.

Hester's cellphone was recovered from his dorm room, under Hester's desk in a black bag. It had a cracked screen.

Forensic examination of the cellphone revealed that it was used by Hester. For example, the cellphone contained a contact for "home" with the same telephone number listed for Hester's mother as his emergency contact in his West Point records, and a contact for "me," which listed the Yahoo account. The Facebook account on the cellphone was for "Patrick Hester" and "cubs_freak90," and the username for the Dropbox account on the cellphone was [cubs_freak90@yahoo.com.](cubs_freak90@yahoo.com.)

The cellphone was also used to receive and store child pornography. There were at least 1,200 images and videos of child pornography stored mostly in the "Downloads" folder on the cellphone, and the cellphone was used to access the Yahoo account on multiple occasions and to open files sent to the Yahoo account, including, for example, files named "10 yr kiddy showing" and "horny 12yo preteen boy JO and squirts." The cellphone was used to access the website "imgsrc.ru," which was known to be used for the trading of child pornography, and also to access Dropbox. In addition, text messages on the cellphone showed that Hester was at West Point when the Yahoo account was accessed using West Point IP addresses, and was in Indiana when the Yahoo account was accessed from IP addresses associated with Hester's home. On several occasions, Hester received child pornography files in the Yahoo account, and those files were saved on the cellphone.

Hester's Dropbox account, the application for which was installed on Hester's cellphone, was searched pursuant to a search warrant. The Dropbox account contained several folders

which Hester shared with email addresses with which he exchanged child pornography emails using the Yahoo account. In addition, one folder in the Dropbox account contained photos of Hester, people close to him, and West Point.

Prior to trial, Hester moved to suppress the statements he made to the HSI agents on the day his dorm room was searched. Following a suppression hearing, the Court denied the motion, finding that Hester was not in custody at the time of the interview, and that his statements were voluntary.

At trial, Hester was convicted of receiving and distributing child pornography (Count One) and possessing child pornography (Count Two). Hester later moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29, in which he asserted (i) that the evidence was insufficient to establish that he, rather than his West Point roommate, possessed, received, or distributed child pornography, or that Hester had the technological expertise to possess, receive, or distribute child pornography; and (ii) that possession of child pornography was a lesser-included offense of receipt of child pornography, and that his conviction of both violated the Double Jeopardy Clause because the proof at trial failed to distinguish between the images supporting each charge. The motion was denied in all respects.

Hester was sentenced principally to 97 months' imprisonment, and he appealed his conviction and sentence. The Second Circuit affirmed by summary order, and later denied a petition for rehearing. The Supreme Court denied certiorari, and Hester subsequently filed the instant Section 2255 motion.

**DISCUSSION**

None of Hester's grounds for relief has merit. Based on the record of the criminal proceedings, the Court finds and concludes that Mr. Mullin provided constitutionally effective representation.

I. Legal Standards

Under the familiar ineffectiveness of counsel standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), to prevail in this case Hester must (i) demonstrate that counsel's performance fell below an "objective standard of reasonableness," meaning it amounted to incompetence under "prevailing professional norms," id. at 688, 690; and (ii) affirmatively prove actual prejudice, meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694, not merely that an error "had some conceivable effect on the outcome." Id. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Indeed, this Court will not second-guess strategic or tactical decisions made by counsel. This is because there are many ways to provide effective assistance in a given case. "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." Harrington v. Richter, 562 U.S. 86, 106 (2011) (quoting Strickland v. Washington, 466 U.S. at 689).

II.   Ineffective Assistance Claims

   A.   Failure to Cross-Examine or Investigate in Connection with Motion to Suppress

Hester claims his attorney was constitutionally ineffective by failing to (i) cross-examine Agent McManus at the suppression hearing about the agent's involvement in an interview of a prisoner in an unrelated case, and (ii) sufficiently investigate the participation of the Army Criminal Investigation Division ("CID") in the search of Hester's dorm room.

First, contrary to Hester's claim, with respect to the prior interview in which the Agent McManus was involved, the trial court in that case did not make any adverse credibility findings regarding Agent McManus's suppression hearing testimony as to the prior interview; to the contrary, the trial court credited Agent McManus's testimony in making its decision. See United States v. FNU LNU, 2010 WL 1686199, at *11-12 (S.D.N.Y. Apr. 22, 2010).[1] Thus, nothing about that case had any bearing on Agent McManus's ability to testify credibly in this case.

In any event, Mr. Mullen's failure to cross-examine Agent McManus about the prior unrelated case[2] was not at all unreasonable. Counsel extensively cross-examined both Agent McManus and another agent about relevant matters and about the agents' credibility, most importantly about the agents' initial encounter with Hester, the circumstances of the interview, and the paperwork generated during and after the interview. Since Agent McManus had not been found incredible in the prior unrelated case, the Court certainly would not have allowed cross-examination about that case. Moreover,"[d]ecisions about 'whether to engage in cross-examination and if so to what extent and in what manner, are . . . strategic in nature' and

---

[1]   Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this ruling. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[2]   FNU LNU involved interviews of a convicted prisoner by immigration enforcement agents to determine whether the prisoner was subject to deportation.

generally will not support an ineffective assistance claim." Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002) (quoting United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)).

In addition, Hester cannot show prejudice. This Court presided at the suppression hearing and found that both agents had testified credibly about the circumstances of Hester's interview, ultimately concluding that Hester was not in custody and his statements were voluntary. There is simply no chance that had counsel been permitted to cross-examine Agent McManus about the prior unrelated interview referred to in FNU LNU the Court would have ruled differently.

Second, Army CID's limited involvement in the Hester investigation makes it clear that there was no violation of the Posse Comitatus Act, 18 U.S.C. § 1385. CID's involvement was permissible "indirect assistance" with the HSI agents' investigation. See United States v. Dreyer, 804 F.3d 1266, 1275 (9th Cir. 2015). CID did not interrogate Hester, nor did they participate in the search of his dorm room. CID was asked to retrieve Hester's cellphone from a classroom where Hester said he left it; but the cellphone was not there, and the CID agents did not find it. The cellphone was ultimately found by HSI agents in Hester's dorm room. And, in any event, even if CID's involvement was improper, suppression would not have been an appropriate remedy. See United States v. Liby, 23 F. Supp. 3d 194, 201 (S.D.N.Y. 2014). Since counsel's failure to present a meritless argument cannot amount to constitutionally ineffective assistance, Hester cannot show that counsel unreasonably failed to investigate the participation of Army CID, or that he was somehow prejudiced by counsel's failure to do so.

Hester's failure to cross-examine or investigate claim must therefore be denied.

B.  Failure to Raise Double Jeopardy Argument and/or Request a Lesser-Included Offense Instruction at Trial

Although it is true the Second Circuit rejected Hester's double jeopardy claim on the basis of waiver (i.e., he did not request an appropriate jury instruction), counsel's failure to argue a double jeopardy violation, or request a special verdict form, or request a lesser-included offense jury instruction was not unreasonable.  The Second Circuit has not yet ruled on the question of whether possession of child pornography is a lesser-included offense of receipt of child pornography, see United States v. Anson, 304 F. App'x 1, 6 (2d Cir. 2008), so counsel could not have been ineffective for failing to request such a charge.  Moreover, as the Circuit held in affirming Hester's conviction, even assuming possession is a lesser-included offense, "no rational jury could have convicted [Hester] of possessing child pornography and acquitted him of receiving and distributing child pornography," given that the evidence at trial showed that Hester had sent or received nearly 100 emails containing child pornography, shared child pornography from his Dropbox account, and confessed to sending and receiving child pornography.  United States v. Hester, 674 F. App'x 31, 34 (2d Cir. 2016).  Thus, counsel's failure to raise this issue cannot amount to constitutionally ineffective assistance.

Nor can Hester establish prejudice.  As this Court held in denying Hester's Rule 29 motion, there was evidence of over 1,000 child pornography files from the Yahoo account, the Dropbox account, and the cellphone; therefore, the jury could have convicted Hester of distributing or receiving certain of those images or videos, but also convicted him of possessing different images or videos.  Thus, Hester cannot establish that but for counsel's purported error, the result of the trial would have been different.

The double jeopardy/lesser-included offense claim must therefore be denied.

C. Failure to Call Expert Witness at Trial

Hester's next claim is that trial counsel was constitutionally ineffective for failing to call an expert witness named Kevin James Ripa at trial. His argument has two components: (i) that Ripa would have testified about certain IP address locations associated with the use of Hester's cellphone and the Yahoo account other than the IP addresses connected to Hester's dorm at West Point or his home in Indiana, so as to suggest to the jury that someone other than Hester may have accessed the Yahoo account or used the cellphone on occasion; and (ii) that trial counsel failed to call Ripa due to a conflict of interest.

First, under Strickland, counsel's decision whether or not to call certain witnesses is a tactical or strategic decision not to be second-guessed by a court after trial. See Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005); United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999). Indeed, here, the decision not to call Ripa is a classic tactical decision. Had counsel done so, the jury's attention would inevitably have been drawn to the mountain of other evidence of Hester's guilt—namely, the evidence showing that Hester in fact used the Yahoo account and the cellphone to send, receive, and store child pornography. Ripa's proposed testimony would not have refuted any of that evidence. In other words, counsel's self-evidently tactical decision not to call Ripa was not unreasonable, it was wise.

For the same reasons, Hester was not prejudiced by the decision not to call Ripa. The evidence of guilt was overwhelming, which included Hester's use of the Yahoo account, cellphone, and Dropbox evidence, as well as Hester's own confession. Ripa's testimony would not have undermined any of that; therefore, Hester has not shown Ripa's testimony would have affected the outcome in his favor.

9

Second, Hester has not shown his trial counsel had an actual conflict of interest. Hester claims that Mr. Mullen complained about Hester's non-payment of fees and that Mullen's decision not to call Ripa was motivated by his interest in saving and earning money. But Hester has done nothing to overcome the presumption that, despite the fee dispute, Mr. Mullen "continue[d] to execute his professional and ethical duty to zealously represent his client." United States v. O'Neil, 118 F.3d 65, 71 (2d Cir. 1997). The Court accepts Hester's representation that he had a fee dispute with his lawyer, but the Court rejects Hester's circular argument that because his lawyer felt he had not been fully compensated and because he failed to call Ripa, therefore he failed to call Ripa because he was not fully compensated. In any event, as explained above, nothing about the failure to call Ripa was unreasonable, and the failure to call Ripa certainly did not prejudice Hester. Therefore, under Strickland, the conflict of interest argument is without merit.

The failure to call an expert witness claim must be denied.

D.    Failure to Call Character Witnesses

Finally, Hester argues that his attorney was constitutionally ineffective because he did call character witnesses at trial who would, Hester claims, have testified to Hester's morally sound character, Christian values, and commitment to volunteer service, and thereby refuted the government's attacks on his character. This argument is plainly without merit, because counsel's decision was neither unreasonable nor prejudicial.

The government did not present evidence of Hester's bad character. It presented evidence of Hester's guilt beyond a reasonable doubt. Assuming the proposed character evidence would have been admissible, it would certainly have opened the door to evidence from the government, harmful to Hester, rebutting that evidence and attacking Hester's character.

10

Counsel's decision not to call such character witnesses was therefore another classical tactical decision, which the Court will not second-guess.

In any event, as explained above, the evidence of Hester's guilt was overwhelming, and Hester has certainly not shown how the presentation of character evidence would have resulted in an acquittal or otherwise affected the outcome in his favor. Thus, under Strickland, he has not shown prejudice.

Thus, the failure to call character witnesses claim is denied.

III. Hester Is Not Entitled to an Evidentiary Hearing

Finally, as to all of Hester's claims, there is no reason to hold any further hearing in this case. In light of this Court's intimate familiarity with the underlying criminal proceedings, the fact that petitioner's "highly self-serving and improbable assertions" are contradicted by the trial record and common sense, and because there are no disputed issues of material fact, no purpose would be served adding to the combined written submissions on the 2255 motion or by otherwise expanding the record. Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001); see Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011); Hayden v. United States, 814 F.2d 888, 892 (2d Cir 1987).

**CONCLUSION**

Petitioner Ricky Patrick Hester's motion under 28 U.S.C. § 2255 is DENIED and the petition is DISMISSED.

As petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Chambers will mail a copy of this Memorandum Opinion and Order to petitioner at the address on the docket.

The Clerk is instructed to close case no. 18 CV 4763.

Dated: September 9, 2019
       White Plains, NY

                          SO ORDERED:

                          _____
                          Vincent L. Briccetti
                          United States District Judge